UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELENEY ANN PULLEY,

    *Petitioner*        CRIM. CASE NO: 1:17-cr-20459
                            CIV. CASE NO.: 1:18-cv-14059
v.                                   DISTRICT JUDGE THOMAS L. LUDINGTON
                                   MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AFTER EVIDENTIARY HEARING**
(ECF No. 50)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion to vacate sentence (ECF No. 50) be **DENIED.**

**II.    REPORT**

    **A.    Introduction**

Petitioner Meleney Pulley's 28 U.S.C. § 2255 motion to vacate her prison sentence (ECF No. 50) remains before the Court under orders of reference from United States District Judge Thomas L. Ludington. (ECF Nos. 52, 96.)

On November 27, 2017, Petitioner pleaded guilty to sex trafficking of a minor in violation of 18 U.S.C. § 1591 pursuant to a Rule 11 plea agreement. (ECF No. 24.) A judgment filed on April 6, 2018, sentenced Petitioner to 230 months incarceration to be followed by five years' supervised release. (ECF No. 41, PageID.161-162.) Petitioner did not file an appeal.

On April 3, 2017, Petitioner filed the instant motion to vacate her sentence pursuant to 28 U.S.C. § 2255. (ECF No. 50). A previous Report and Recommendation (R&R) recommended

that an evidentiary hearing be held as to one issue raised in the petition, *i.e.*, whether Defendant asked counsel to file a direct appeal, and that R&R was adopted. (ECF Nos.105, 111.) The Court also referred the matter to the undersigned to conduct the hearing and make a recommendation on the merits. (ECF No. 111.) A hearing was held on March 2, 2020.

**B.     Evidentiary Hearing**

At the evidentiary hearing, the government submitted one exhibit, a letter from Petitioner to trial counsel stamped as received in the mail on February 7, 2018. That letter is also in the record at ECF No. 92, PageID.403-409. Trial counsel was sequestered from the courtroom until called as a witness.

Petitioner testified first. Petitioner testified that right after sentencing and while still in the courtroom, she asked trial counsel to meet with her and that she did meet with trial counsel in the Marshal's lockup conference room just after she was sentenced. She told trial counsel that she "got screwed" and that she wanted to file an appeal and that trial counsel said, "O.K." and left the room. Petitioner stated that trial counsel did not discuss advantages or disadvantages of appealing nor did he mention that she had waived her right to appeal. Petitioner added that she attempted to call trial counsel from the Roscommon County jail where she was housed pending and for a while after sentencing and again from Oklahoma where she was imprisoned in service of her sentence but that none of her collect calls were accepted. Petitioner also sent letters to trial counsel after her sentencing, the first of which Petitioner conceded did not mention anything about an appeal because she thought the appeal had already been filed. In her second letter to trial counsel after sentencing, she asked what was going on with the appeal but trial counsel

never responded. When asked to explain why she thought she "got screwed," Petitioner stated that trial counsel told her she would be sentenced at the "low end" of the guidelines, which she interpreted as 210 months. Her actual sentence was 230 months. The applicable guideline range was 210-262 months.

On cross-examination, Petitioner indicated that trial counsel had gone over the plea agreement with her for a "couple hours," that she retained a copy of the agreement and that she read very well on her own since she attended college. Petitioner indicated that she understood she had given up her right to appeal as long as she was not sentenced to any higher than 262 months. While still in the courtroom after sentencing, Petitioner state that she told trial counsel she was not happy with the sentence because trial counsel told her she would get the "low end" of the guidelines, and that trial counsel responded, "it could have been worse." The government impeached Petitioner with a statement memorialized in the presentence investigation report that she was valedictorian whereas, the government proffered and Petitioner agreed that her grade point was 1.8/4.0 in high school. Petitioner clarified that she was valedictorian in middle school, not high school. The government then offered Exhibit One, which was received into evidence. Exhibit One is a five-page letter written from Petitioner to trial counsel stamped February 7, 2018, detailing many paragraphs of the presentence investigation report that Petitioner thought were incorrect but not mentioning or taking issue with paragraph 89 stating that she was valedictorian. On rebuttal, Petitioner noted that the presentence report said only that Petitioner was "class valedictorian" and did not specify high school or middle school so it would not necessarily follow that Petitioner would see a need to correct that statement.

3

Petitioner testified that she knew she could appeal regarding ineffective assistance of counsel even though she had waived her other appellate rights and she also stated that she never told trial counsel he was or had done anything that she believed was ineffective. The government also noted, and Petitioner agreed, that in her May 8, 2018 letter (ECF No. 92, PageID.412-415) she never had any thoughts that trial counsel was ineffective, nor did she ask anything about a possible appeal. Instead, the letter states only a regret that she entered into a plea agreement and that she "should have just pled guilty. I'm still having a really hard time with the amount of time I got. Probably would have still been sentenced within the guidelines." (ECF No.92, PageID.412.)

The government then called trial counsel to the witness stand. Trial counsel noted that he had been practicing law for 35 years, all criminal cases, had never been cited for malpractice nor had he ever suffered any substantiated grievance. Trial counsel also indicated that he had filed many appeals in the past.

Trial counsel testified that in this case, he went over the Rule 11 plea agreement with Petitioner in detail and spent a significant amount of time going over the appeal waiver, what an appeal is, and what the waiver meant. Trial counsel also explained that Petitioner could receive any sentence and that if she was sentenced outside the guidelines (*i.e.*, higher), she could withdraw her plea. Trial counsel indicated he did not promise Petitioner that she would receive a sentence of 210 months or less in any of the multiple times he went over the plea agreement with Petitioner. Trial counsel stated that of the 25 hours billed, a great majority of those hours were dedicated to going over the plea agreement and counseling Petitioner on her decision

4

whether to accept the plea offer. Trial counsel billed 0.8 hours that day and his best recollection was that he spoke with Petitioner before sentencing but not after sentencing but he was not sure. Trial counsel further explained, on cross-examination, that he is pretty sure his meeting with Petitioner was before sentencing because there was no surprise at sentencing, she got what they knew she was going to get, so there was no reason to talk after sentencing. Trial counsel did not remember Petitioner saying she "got screwed" let alone that she wanted to appeal. Trial counsel was very sure that Petitioner never asked to file an appeal. If she had, trial counsel indicated that he would have discussed options and the Rule 11 plea agreement; he was sure he would not have simply said "o.k." and left. Trial counsel indicated that if Petitioner had asked to file an appeal, assuming he could have found a basis and that an appeal would be appropriate, he would have filed an appeal. On cross-examination, trial counsel further explained that he would not have taken an appeal "frivolously." Trial counsel reiterated that Petitioner never asked him, orally or in any letter, to file an appeal and that Petitioner never expressed any desire to appeal. When asked, during rebuttal, if the appellate waiver in the plea agreement was absolute or subject to exception, trial counsel indicated it was close to absolute but did contain an exception for raising ineffective assistance of counsel and that if he had been asked to file an appeal claiming he was ineffective, trial counsel would have field that appeal on behalf of his client. Trial counsel explained that even if a conversation had occurred after sentencing, there was no discussion of an appeal and that did not seem unusual because Petitioner got what she bargained for.

  **C.**  **Governing Law and Analysis**

It is well settled that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984). Plea agreements are contractual in nature so courts are guided by general principles of contract interpretation when considering them. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). A plea agreement is a bargained-for exchange that does not implicate the constitution when it is entered into knowingly and voluntarily. *Mabry*, 467 U.S. at 508 ("It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired."). "[I]n cases where a defendant argues that his [or her] plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his [or her] . . . right to collateral attack . . . ." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). On the other hand, "[e]nforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted).

Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the waiver will be enforced. *Id.* The Supreme Court enunciated the standard for voluntary and intelligent pleas in *Brady v. United States*:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him [or her] by the court, prosecutor, or his [or her] own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or

6

> perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. 742, 755 (1970). Additionally, a plea is intelligently made where the defendant "was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Id.* at 756.

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, which requires the movant to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficiency prejudiced the movant to such an extent that the result of the proceeding is unreliable. 466 U.S. 668, 688 (1984). In *Roe v. Flores-Ortega*, the Supreme Court extended *Strickland* to failure-to-file-appeal and to failure-to-consult cases: "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he [or she] otherwise would have taken, the defendant has made out a successful ineffective assistance claim entitling him [or her] to an appeal" without any further showing. 528 U.S. 470, 484 (2000). The Supreme Court recently confirmed that "the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver," and regardless of whether "a particular defendant seems to have had poor prospects" on appeal. *Garza v. Idaho*, 139 S.Ct. 738, 747-49 (2019). In the same vein, the Sixth Circuit has found that counsel must file an appeal when their client explicitly requests it, "even where an appeal appears frivolous." *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012) (requiring an *Anders* brief–"a brief

7

indicating there are no meritorious grounds for appeal as described in *Anders v. California*, 386 U.S. 738, 744 (1967)"– in such cases).

However, when the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant." *Flores-Ortega*, 528 U.S. at 477. Consult means "advising about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel did consult with defendant then counsel only "performs in a professionally unreasonable manner . . . by failing to follow the defendant's express instructions with respect to the appeal." *Id.*

The Court next addressed situations where counsel had failed to consult. *Id.* at 478. The Court first declined to establish a *per se* rule that counsel's failure to consult always constitutes deficient performance; instead, a "court must ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court articulated two scenarios when the Constitution requires counsel to "consult" with defendant: "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he [or she] was interested in appealing." *Id.* at 479; *see also Granger v. Hurt*, 215 F. App'x 485, 492 (6th Cir. 2007). Although not determinative, a "highly relevant factor . . . [is] whether the conviction follows a trial or a guilty plea . . . ." *Flores-Ortega*, 528 U.S. at 480. In addition, courts should consider whether the defendant received the sentence bargained for as

8

part of the plea, and whether the plea expressly reserved or waived some or all appeal rights. *Id.* The term "consult" specifically means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.

The burden of proof Petitioner faces is preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

I suggest that counsel's failure to consult regarding the advantages and disadvantages of an appeal was not deficient with respect to the first scenario laid out in *Flores-Ortega*. This is not a case where "a rational defendant would want to appeal." *See Flores-Ortega*, 528 U.S. at 480. Petitioner has waived this right and there do not appear to be any non-frivolous grounds for appeal.

As to the second scenario, the court must make a credibility determination to conclude whether "this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *See id.* The Court is guided by the arguments of the parties after the witness testimony was concluded. Petitioner argues that both sides have an interest in the outcome: Petitioner as to gaining a resentencing and trial counsel in preserving his reputation. Petitioner further argues that Petitioner's testimony was crystal clear about what happened, she remembered details about where the conversation took place, when it took place, and the words she and trial counsel used. Petitioner further argued that trial counsel admitted that he did not discuss the advantages and disadvantages of taking an appeal with Petitioner, and thus, that he failed to discover whether she wanted to appeal or not. Petitioner also noted that trial counsel's

perspective on his duty was in error because he has a duty to consult with his client regarding an appeal and even if an appeal would be without a basis or frivolous, if a client asks counsel to file an appeal, he must (and then he may seek to withdraw after filing the notice).

The government argued that in assessing credibility, the court may and should look to other claims raised in the motion to vacate wherein Petitioner was found not to be credible and that her assertions directly contradicted statements made under oath at the plea taking. The government also contended that Petitioner's version of the facts does not make sense because no lawyer would simply say "o.k." and walk out after a client indicated she wanted to file an appeal. The government also notes that none of Petitioner's letters indicate a request to appeal or make any reference to a prior request to appeal.

Although Petitioner provides more detail in her recollection, I find that there are no other factors that support a finding that she is more credible than trial counsel. As indicated in the previous R&R, Petitioner's allegations were directly contradicted by statements made under oath in her plea colloquy. (ECF No. 105, PageID.466.) In addition, I find Petitioner's version of the discussion wherein she alleges she asked trial counsel to appeal to be an unusual and unlikely conversation. If Petitioner had complained that she "got screwed" at sentencing and wanted to appeal, it is highly unlikely that any person, let alone an attorney, would simply say "o.k." and walk away. It seems highly unusual that Petitioner would not have demanded more from trial counsel if she had asked to appeal and simply gotten an "o.k." in response. Any Petitioner, and this highly communicative Petitioner even more likely, would have wanted to know how the appellate process works, how long it would take, what could be expected, etc. It would also be

10

a very rare situation for a highly communicative person like Petitioner not to inquire about an appeal in the May 2018 letter she sent to trial counsel describing her regrets and asking for information about her situation as well as her husband's case. (ECF No. 92, PageID.412-415.) Further, trial counsel indicated that he would have spoken to Petitioner about an appeal, had he been asked. I further note that trial counsel's testimony appears more credible since he did not paint himself in the best light but rather candidly stated that he does not always and did not consult with Petitioner about the advantages and disadvantages of filing an appeal and he conceded that if Petitioner had asked to file an appeal, he would not have filed an appeal if an appeal would have been frivolous, thereby exposing himself to some potential criticism under *Campbell*.

Finally, application of the other relevant factors in deciding whether this particular defendant reasonably demonstrated to counsel that she was interested in appealing do not help Petitioner's cause. The Supreme Court has indicated that the court may consider whether the conviction follows a trial or a guilty plea, whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appeal rights. *Flores-Ortega*, 528 U.S. at 480. In this case, the conviction was via a guilty plea pursuant to an agreement wherein Petitioner expressly waived the right to appeal. Moreover, Petitioner received the benefit of the bargain since her sentence of 230 months was far below the maximum sentence of 262 months allowed by the plea agreement. I further suggest that even if Petitioner were to be believed that she was promised a sentence at the "low end" of the guidelines, a

11

sentence of 230 months is within the low end of a 210-262 month range. Thus, Petitioner's chances for success on appeal are slim.

I therefore suggest that Petitioner has not met her burden to show that trial counsel was ineffective. Accordingly, I recommend that her Motion to Vacate Sentence be denied.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P.

12

72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 5, 2020　　　　　　　　S/ PATRICIA T. MORRIS
　　　　　　　　　　　　　　　　　Patricia T. Morris
　　　　　　　　　　　　　　　　　United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Meleney Ann Pulley, Inmate # 55744-039, Hazelton-US Penitentiary, P.O. Box 3000, Bruceton Mills, WV 26525.

Date: March 5, 2020　　　　　　　　By s/Sara Krause
　　　　　　　　　　　　　　　　　Acting in the absence of
　　　　　　　　　　　　　　　　　Kristen Casteneda, Case Manager

13