UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,        Case No. 17-20459-01

v        Honorable Thomas L. Ludington
        Magistrate Judge Patricia T. Morris

MELENEY ANN PULLEY,

        Defendant-Petitioner.
_____/

**ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING DEFENDANT'S MOTION TO VACATE SENTENCE, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

On July 5, 2017, Defendant Meleney Ann Pulley was indicted on one count of sex trafficking of children in violation of 18 U.S.C. §1591. ECF No. 1. She entered into a Rule 11 Plea Agreement, pleading guilty to the offense. ECF No. 24. She subsequently filed a motion to vacate her sentence under 28 U.S.C. §2255, claiming that her counsel, Robert Betts, was ineffective because he did not file a notice of appeal pursuant to her request. ECF No. 50.

**I.**

**A.**

On November 27, 2017, Pulley entered into a Rule 11 Plea Agreement. It provides, "There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is 210 – 262 months, as set forth on the attached worksheets." ECF No. 24 at PageID.64. Paragraph 8 of the Plea Agreement further provides:

> The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 262 months, the defendant also waives any right she may have to appeal her sentence on any grounds. If the defendant's sentence of imprisonment is at least 210 months, the government waives any right it may have to appeal the defendant's sentence.

> Nothing in this waiver bars a claim of ineffective assistance of counsel on appeal or by Collateral Relief under 28 U.S.C. § 2255.

*Id.* at PageID.68.

On November 27, 2017, Judge Morris conducted a plea hearing pursuant to Pulley's consent. The hearing transcript provides:

> THE COURT: [T]he defendant waives any right she has to appeal her conviction. If her sentence does not exceed 262 months, she also waives her right to appeal her sentence on any grounds. If her sentence is at least 210 months, the Government waives any right it may have to appeal the defendant's sentence. Nothing in this waiver bars a claim of ineffective assistance of counsel on appeal or by collateral relief under Title 28 United States Code Section 2255.
>
> \*\*\*
>
> THE COURT: Ms. Pulley, just to make sure that you understand what I think are the more difficult parts of the agreement, you are giving up your right under this agreement to appeal your conviction on any grounds. I just want to make sure you understand that's today's plea-taking process basically, because when your plea is accepted, that will result in a conviction. You understand that, ma'am?
>
> THE DEFENDANT: I understand.
>
> \*\*\*
>
> THE COURT: Okay. Good…I do want to make sure everything here is understandable to you and so, based on that, I think we had looked at the appeal waiver, and under that waiver, Ms. Pulley, you are giving up your ability to appeal your conviction on any grounds. You're also giving up your ability to appeal your sentence as long as Judge Ludington doesn't sentence you any higher than 262 months. Do you understand that, ma'am?
>
> THE DEFENDANT: Yes, ma'am.

ECF No. 38 at PageID.130-133.

On April 6, 2018, Pulley was sentenced to 230 months of incarceration and 5 years of supervised release. ECF No. 41. During her sentencing hearing, Pulley was asked whether she understood her rights of appeal pursuant to her Rule 11 Plea Agreement. The hearing transcript provides:

> THE COURT: One concluding matter that relates to paragraph eight of the original plea arrangement provided the defendant would waive any right she had to appeal her conviction on any grounds further provided that if the defendant's sentence in prison does not exceed…262 months…
>
> The defendant also waives any right that she might have to appeal her sentence on any grounds…
>
> Mr. Betts, have you had a chance to talk to Ms. Pulley considerably?
>
> MR. BETTS: I have.

ECF No. 82 at PageID.344.

**B.**

In December 2018, Pulley filed her motion to vacate her sentence under 28 U.S.C. §2255. It provides in part:

> Mrs. Pulley met with her attorney after her sentencing in the attorney room at the Federal building located at 100 Washington Avenue in Bay City, Michigan. Due to manipulations by her attorney of leniency and receiving the low end of the guidelines, she asked him to file an appeal in which he failed to do so. Mrs. Pulley reasonably demonstrated to counsel that she was interested in appealing.

ECF No. 50 at PageID.239. Pulley did not include with her motion any evidence demonstrating that she had asked Mr. Betts to file an appeal.

> The Government filed a response to Pulley's motion, which provides:
>
> Pulley has failed to support her motion with any evidence, including a sworn affidavit. On the contrary, Pulley's counsel has denied the allegation and sworn that Pulley never asked him to file an appeal. In addition, Pulley's letter to counsel after just one month after her sentencing supports the conclusion that she never requested a notice of appeal be filed. While the letter expresses disappointment with the length of her sentence and seems to suggest that she should have pleaded guilty without a Rule 11, nowhere in the letter does she mention an appeal. She does not inquire if an appeal has been filed; she does not ask about the status of the appeal; and she does not inquire into the likelihood of success of the appeal. She asks her attorney about various other matters including receiving credit for her time in pretrial custody and the status of her co-defendant's sentence. She makes no reference whatsoever to any appeal. Moreover, Pulley's claim that she wanted to appeal despite having waived that right and having received a sentence within the range she bargained is highly unlikely.

ECF No. 92 at PageID.384-385 (citations omitted). The Government attached Attorney Betts' affidavit which provides that Pulley "knew full well her Rule 11 Agreement included an appeal waiver. She never expected to appeal and did not direct me to file an appeal." ECF No. 92-2 at PageID.392.

Judge Morris subsequently determined that "more information [was] needed to make a ruling on the motion." ECF No. 103 at PageID.450.[1] Her order directed Pulley to

> [S]ubmit an affidavit under penalty of perjury in support of her § 2255 motion allegation that she "instructed counsel to prosecute a direct appeal… [but] no direct appeal was filed." Petitioner's affidavit should specify details including the conversation that occurred, where it occurred, and when it occurred.

*Id.* (citation omitted).

> Pulley filed a statement which provides:
>
> To whom it may concern,
>
> On April 5th 2017, I, Meleney Ann Pulley was sentenced to 230 months in federal prison in front of District Court Judge Thomas L. Ludington. After said sentencing I met with Attorney Robert Betts in the attorney confrence [sic] room located at 1000 Washington Ave and informed him to file a direct appeal on my behalf. Attorney Robert Betts informed me he would do so and he failed to. No direct appeal was filed on my behalf.

ECF No. 104 at PageID.452. This text is followed by what appears to be a stamp which provides: "AUTHORIZED BY THE ACT OF July 27, 1955 TO ADMINISTER OATHS (18USC 4004)." *Id.* Below is a signature and the title "CORRECTIONAL TREATMENT SPECIALIST" followed by a date of September 23, 2019. Pulley's signature appears below the stamp.

On October 18, 2019, Judge Morris issued a report recommending that Pulley's motions be denied in all aspects except as to her claim that Attorney Betts failed to file an appeal. ECF No.

---

[1] Judge Morris reasoned that directing Pulley to file an affidavit was appropriate because in a similar case, the Sixth Circuit, "did not chide the district court for ordering the parties to file affidavits." ECF No. 105 at PageID.456.

105. She recommended that an evidentiary hearing be held as to that claim alone. Although Judge Morris' report explicitly stated that the parties to the action could object to and seek review of the recommendation within fourteen days of service of the report, neither party filed any objections.

### C.

The Court determined that Pulley's statement did not qualify as an affidavit because "it contains no oath or affirmation, it does not address the risk of perjury for a false claim, and it is unclear whether a Correctional Treatment Specialist has the authority to administer an oath or affirmation." ECF No. 109 at PageID.482. The Court directed Pulley to either file an affidavit remedying these errors or withdraw her §2255 motion.

On January 6, 2020, Pulley filed a second statement which provides:

> This is to be considered as a sworn oath affidavit. I swear the below mentioned facts are true to the best of my knowledge.
>
> On April 5, 2017, I, Meleney Pully, met with attorney Robert Betts in the attorney confrence [sic] room at the federal building located at 100 Washington Avenue in Bay City Michigan after I was sentenced to 230 months in federal prison in front of District Court Judge Thomas L. Ludington. Due to manipulations by my attorney of leniency and receiving the low end of the guidelines, I directed him to file an appeal in which he failed to do so. Therefore violating my 6th Amendment right of due process and effective assistance of counsel.
>
> Thank you for your time.

ECF No. 110. [2] The statement is signed "MePully" and notarized by Stacy Riley, whose notary stamp identifies her as a notary public of Texas.

The Court determined that Pulley's statement qualified as an affidavit and that she was entitled to an evidentiary hearing regarding her alleged request to Attorney Betts to file an appeal. It directed Judge Morris to hold an evidentiary hearing "limited to Petitioner's claim that she

---

[2] Petitioner spells her name "Pully," but the indictment spells it "Pulley." Accordingly, the spelling "Pulley" will continue to be used in the order.

explicitly asked counsel to file an appeal on her behalf and to issue proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)." ECF No. 111 at PageID.491.

**D.**

Judge Morris' summary of the evidentiary hearing provides:

At the evidentiary hearing, the government submitted one exhibit, a letter from Petitioner to trial counsel stamped as received in the mail on February 7, 2018. That letter is also in the record at ECF No. 92, PageID.403-409. Trial counsel was sequestered from the courtroom until called as a witness.

Petitioner testified first. Petitioner testified that right after sentencing and while still in the courtroom, she asked trial counsel to meet with her and that she did meet with trial counsel in the Marshal's lockup conference room just after she was sentenced. She told trial counsel that she "got screwed" and that she wanted to file an appeal and that trial counsel said, "O.K." and left the room. Petitioner stated that trial counsel did not discuss advantages or disadvantages of appealing nor did he mention that she had waived her right to appeal. Petitioner added that she attempted to call trial counsel from the Roscommon County jail where she was housed pending and for a while after sentencing and again from Oklahoma where she was imprisoned in service of her sentence but that none of her collect calls were accepted. Petitioner also sent letters to trial counsel after her sentencing, the first of which Petitioner conceded did not mention anything about an appeal because she thought the appeal had already been filed. In her second letter to trial counsel after sentencing, she asked what was going on with the appeal but trial counsel never responded. When asked to explain why she thought she "got screwed," Petitioner stated that trial counsel told her she would be sentenced at the "low end" of the guidelines, which she interpreted as 210 months. Her actual sentence was 230 months. The applicable guideline range was 210-262 months.

On cross-examination, Petitioner indicated that trial counsel had gone over the plea agreement with her for a "couple hours," that she retained a copy of the agreement and that she read very well on her own since she attended college. Petitioner indicated that she understood she had given up her right to appeal as long as she was not sentenced to any higher than 262 months. While still in the courtroom after sentencing, Petitioner state that she told trial counsel she was not happy with the sentence because trial counsel told her she would get the "low end" of the guidelines, and that trial counsel responded, "it could have been worse." The government impeached Petitioner with a statement memorialized in the presentence investigation report that she was valedictorian whereas, the government proffered and Petitioner agreed that her grade point was 1.8/4.0 in high school. Petitioner clarified that she was valedictorian in middle school, not high school. The government then offered Exhibit One, which was received into evidence. Exhibit One is a five-page letter written from Petitioner to trial counsel stamped February

7, 2018, detailing many paragraphs of the presentence investigation report that Petitioner thought were incorrect but not mentioning or taking issue with paragraph 89 stating that she was valedictorian. On rebuttal, Petitioner noted that the presentence report said only that Petitioner was "class valedictorian" and did not specify high school or middle school so it would not necessarily follow that Petitioner would see a need to correct that statement.

Petitioner testified that she knew she could appeal regarding ineffective assistance of counsel even though she had waived her other appellate rights and she also stated that she never told trial counsel he was or had done anything that she believed was ineffective. The government also noted, and Petitioner agreed, that in her May 8, 2018 letter (ECF No. 92, PageID.412-415) she never had any thoughts that trial counsel was ineffective, nor did she ask anything about a possible appeal. Instead, the letter states only a regret that she entered into a plea agreement and that she "should have just pled guilty. I'm still having a really hard time with the amount of time I got. Probably would have still been sentenced within the guidelines." (ECF No.92, PageID.412.)

The government then called trial counsel to the witness stand. Trial counsel noted that he had been practicing law for 35 years, all criminal cases, had never been cited for malpractice nor had he ever suffered any substantiated grievance. Trial counsel also indicated that he had filed many appeals in the past.

Trial counsel testified that in this case, he went over the Rule 11 plea agreement with Petitioner in detail and spent a significant amount of time going over the appeal waiver, what an appeal is, and what the waiver meant. Trial counsel also explained that Petitioner could receive any sentence and that if she was sentenced outside the guidelines (*i.e.*, higher), she could withdraw her plea. Trial counsel indicated he did not promise Petitioner that she would receive a sentence of 210 months or less in any of the multiple times he went over the plea agreement with Petitioner. Trial counsel stated that of the 25 hours billed, a great majority of those hours were dedicated to going over the plea agreement and counseling Petitioner on her decision whether to accept the plea offer. Trial counsel billed 0.8 hours that day and his best recollection was that he spoke with Petitioner before sentencing but not after sentencing but he was not sure. Trial counsel further explained, on cross-examination, that he is pretty sure his meeting with Petitioner was before sentencing because there was no surprise at sentencing, she got what they knew she was going to get, so there was no reason to talk after sentencing. Trial counsel did not remember Petitioner saying she "got screwed" let alone that she wanted to appeal. Trial counsel was very sure that Petitioner never asked to file an appeal. If she had, trial counsel indicated that he would have discussed options and the Rule 11 plea agreement; he was sure he would not have simply said "o.k." and left. Trial counsel indicated that if Petitioner had asked to file an appeal, assuming he could have found a basis and that an appeal would be appropriate, he would have filed an appeal. On cross-examination, trial counsel further explained that he would not have taken an appeal "frivolously." Trial counsel reiterated that Petitioner never

>asked him, orally or in any letter, to file an appeal and that Petitioner never expressed any desire to appeal. When asked, during rebuttal, if the appellate waiver in the plea agreement was absolute or subject to exception, trial counsel indicated it was close to absolute but did contain an exception for raising ineffective assistance of counsel and that if he had been asked to file an appeal claiming he was ineffective, trial counsel would have field that appeal on behalf of his client. Trial counsel explained that even if a conversation had occurred after sentencing, there was no discussion of an appeal and that did not seem unusual because Petitioner got what she bargained for.

ECF No. 117 at PageID.502–03.

**E.**

After summarizing the evidentiary hearing, Judge Morris in her report recommended that Defendant's motion to vacate be denied. She determined that Mr. Betts was not ineffective for failing to file an appeal because "there do not appear to be any non-frivolous grounds for appeal." *Id.* at PageID.509. She further noted that other relevant factors indicated that Defendant did not express an interest in appeal, including the fact that she pleaded guilty, waived her right to appeal, and was sentenced within her guideline range.

**II.**

Defendant has filed three objections to Judge Morris' Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify

the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.*

### III.

### A.

In her first objection, Petitioner claims that Judge Morris erred by not making "a specific finding as to whether petitioner actually gave counsel a specific instruction to file a notice of appeal." ECF No. 118 at PageID.515. She contends that:

> Although [Petitioner] could not remember her post-sentencing conversation with counsel word-for-word, she was able to outline the most important parts of the conversation. Counsel, on the other hand, could not even recall whether or not he met with petitioner in the Marshal's lockup conference room after sentencing.

ECF No. 118 at PageID.515.

Petitioner's objection will be overruled because Judge Morris determined that Petitioner's testimony about requesting an appeal was not credible.

> Petitioner's allegations were directly contradicted by statements made under oath in her plea colloquy. In addition, I find Petitioner's version of the discussion wherein she alleges she asked trial counsel to appeal to be an unusual and unlikely conversation. If Petitioner had complained that she "got screwed" at sentencing and wanted to appeal, it is highly unlikely that any person, let alone an attorney, would simply say "o.k." and walk away. It seems highly unusual that Petitioner would not have demanded more from trial counsel if she had asked to appeal and simply gotten an "o.k." in response. Any Petitioner, and this highly communicative Petitioner even more likely, would have wanted to know how the appellate process works, how long it would take, what could be expected, etc. It would also be a very rare situation for a highly communicative person like Petitioner not to inquire about an appeal in the May 2018 letter she sent to trial counsel describing her regrets and asking for information about her situation as well as her husband's case. (ECF No. 92, PageID.412-415.) Further, trial counsel indicated that he would have spoken to Petitioner about an appeal, had he been asked. I further note that trial counsel's testimony appears more credible since he did not paint himself in the best light but rather candidly stated that he does not always and did not consult with Petitioner about the advantages and disadvantages of filing an appeal and he conceded that if Petitioner had asked to file an appeal, he would not have filed an appeal if an appeal would have been frivolous, thereby exposing himself to some potential criticism under *Campbell*.

ECF No. 117 at PageID.510–11. As explained by Judge Morris, Petitioner's claims that she asked Mr. Betts to file an appeal lack credibility.

In her third objection, Petitioner argues that Judge Morris erred when she granted more weight to Mr. Betts' testimony than Petitioner's testimony. ECF No. 118 at PageID.517. Petitioner contends that her testimony "was far more detailed than counsel's regarding what transpired after the Court imposed sentence." *Id.* Petitioner's objection will be overruled. The credibility of a testimony is determined by more than just the amount of detail furnished. Other factors include the likelihood of the testified events occurring, whether the behavior of the actors is consistent with their past behavior, and the alleged context in which the event occurred. Judge Morris

considered a variety of factors to determine that Petitioner's testimony was not credible. The Court agrees with Judge Morris' reasoning and will overrule Petitioner's third objection.

**B.**

In her second objection, Petitioner argues that Mr. Betts' performance was deficient because he did not consult with Petitioner about filing an appeal. The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

Petitioner argues that Judge Morris erred when she found that "[t]his is not a case where 'a rational defendant would want to appeal.'" ECF No. 118 at PageID.516 (quoting R&R, ECF No. 117 at PageID.509). She contends that, "There is nothing irrational about a defendant wishing to file an appeal based on a claim of ineffective assistance of counsel when the right to take such action has not been waived." *Id.* at PageID.516–17. She argues that "at least a colorable, non-frivolous claim" exists that counsel coerced her into taking the guilty plea. *Id.* at PageID.517.

The standards of *Flores-Ortega* are only slowly being understood in the defense community. Indeed, most defense attorneys make every effort to secure the best treatment for their client possible and offering an appeal waiver is often an important consideration to prosecutors in arriving at a plea agreement. Accordingly, the requirement that defense counsel potentially jeopardize their client's interests by filing an appeal they believe has no merit is counterintuitive. If the defendant breaches the plea agreement by filing the appeal, the value of the plea agreement could be lost and the defendant may face a harsher sentence than the sentence negotiated in the

original plea agreement. Justice Thomas explained this tension in his dissenting opinion in *Garza v. Idaho*.

> Under these circumstances, it is eminently reasonable for an attorney to "respec[t] his client's formal waiver of appeal" and uphold his duty "to avoid taking steps that will cost the client the benefit of the plea bargain." *Nunez v. United States*, 546 F.3d 450, 453, 455 (CA7 2008) (Easterbrook, C. J.). And because filing an appeal places the defendant's plea agreement in jeopardy, an attorney's decision not to file in the face of an appellate waiver does not amount to the failure to perform "a purely ministerial task" that "cannot be considered a strategic decision." *Flores-Ortega*, 528 U.S. at 477, 120 S.Ct. 1029. Even where state law or a plea agreement preserves limited appeal rights, an attorney does not fail to "show up for appeal" by declining to challenge a waived issue. *Nunez*, *supra*, at 454.

*Garza v. Idaho*, 139 S.Ct. 738, 754 (2019).

Though Petitioner now presents an array of misgivings to support her claim of ineffective assistance of counsel, they do not rise to such a level that a rational defendant would file an appeal and risk the benefits bargained for in their plea agreement. Her second objection will be overruled.

## IV.

Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V.

Accordingly, it is **ORDERED** that Petitioner's objections, ECF No. 118, are **OVERRULED**.

It is further **ORDERED** that the Report and Recommendation, ECF No. 117, is **ADOPTED**.

It is further **ORDERED** that Petitioner's Motion to Vacate Under § 2255, ECF No. 50, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: July 30, 2020         s/Thomas L. Ludington
                             THOMAS L. LUDINGTON
                             United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Meleney Ann Pulley** #55744-039, HAZELTON U.S. PENITENTIARY, Inmate Mail/Parcels, P.O. BOX 3000, BRUCETON MILLS, WV 26525 by first class U.S. mail on July 30, 2020.

                             s/Kelly Winslow
                             KELLY WINSLOW, Case Manager